BOARD OF CHOSEN FREEHOLDERS, COUNTY OF BERGEN AND SHERIFF JOSEPH JOB, BERGEN COUNTY, PLAINTIFFS-APPELLANTS, v. ARTHUR O. MILLER AND CIVIL SERVICE COMMISSION, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted November 9, 1976—Decided November 23, 1976.

tions for this job. On November 7, 1975, said specifications were released to us, which is only six days prior to the bid. This is not sufficient time to study this job."

Before Judges HALPERN, ALLCORN and BOTTER.

*Mr. Paul J. Giblin,* attorney for appellants (*Mr. James Samuel Webb, Jr.,* on the brief).

*Mr. Robert A. Pennachio,* attorney for respondent Miller.

A statement in lieu of brief was submitted for the Civil Service Commission by *Mr. William F. Hyland,* Attorney General of New Jersey (*Mr. Arnold Lakind,* Deputy Attorney General, of counsel).

PER CURIAM. Respondent Arthur O. Miller was discharged from employment as a sheriff's officer in the Sheriff's Department of Bergen County for conduct unbecoming an employee in the public service. The employing authority found that he was guilty of concealing a crime, having failed to promptly report an alleged mugging to the Lodi Police Department, and found him guilty also of giving false information to investigating officers of the Lodi Police De-

partment and to attendants at the Hackensack Hospital. Miller appealed to the Civil Service Commission. The Commission found that Miller had committed the misconduct as charged, except that he did not give false information at the Hackensack Hospital. However, the Commission modified the penalty by substituting a six-month suspension for removal from employment, and ordered reinstatement with back pay mitigated by Miller's earnings during the period beyond the six-month suspension.

On this appeal the employing authority contends that the evidence before the Commission strongly supported all charges of wrongdoing and the Commission erred in reducing the penalty for Miller's serious misconduct.

Miller was temporarily appointed as a sheriff's officer in May 1972 and worked as a jail guard at the Bergen County Jail Annex. In April 1973, in the course of his duties, Miller met an inmate named Jimmy Talavera. In the summer months of 1974, after Talavera's release from confinement, appellant and his wife socialized with Mr. and Mrs. Talavera.

At midnight on September 9, 1974 Talavera telephoned Miller and said, "I have a problem, would you please come over." According to Miller's testimony Talavera then hung up, and Miller went to Talavera's apartment in Lodi, New Jersey. When he arrived he observed a male lying on the floor in the living room with blood around his swollen mouth. Miller testified that Talavera said that the man lived with him, that Talavera found him downstairs in the lobby and that the man said he had been mugged.

Miller and Talavera transported the injured man to the Hackensack Hospital. There Miller identified himself as "from the Sheriff's Department" and displayed his shield. When asked why he displayed his shield he testified on direct, "Because it was understandable that anything like that has to have an investigation, you know." Clearly, by his own admission, Miller gave the impression that he was acting in an official capacity, the likely effect of which would discourage further police investigation.

The admission record of the Hackensack Hospital bears the following notation: "Sheriff's Office: State pt was mugged Route 46, Lodi. Found on highway." Miller denied furnishing this information, but other evidence in the case contradicts Miller's testimony.

The Lodi Police Department received a report that a large amount of blood was found in the parking lot of the apartment house. The trail of blood led to Talavera's apartment. At first neither Talavera nor Miller told the police officers what had happened. Miller identified himself as "Arthur Green" of the Bergen County Sheriff's Office and gave them a false address. The police checked on the license plate of Miller's car and discovered his true identity and location. When they called him at home later in the morning Miller offered the excuse that he was a victim of circumstances and did not want his position in the Sheriff's Office jeopardized.

Investigating the incident, a detective from the Bergen County Sheriff's Office spoke to the victim, Peter Lange, at the hospital. He testified that the victim was "banged up pretty bad"; his jaw was broken and he looked like somebody had "worked him over with a club or iron bar." The detective could not determine how the assault had occurred. The detective also interviewed Miller, and Miller admitted that he was wrong in giving a false name to the police and in other respects, but that he did so because he was frightened and did not want to be implicated. There was evidence that Miller had been trained at the Police Academy and that Sheriff Officer policy was to report crimes and accidents to local authorities.

The evidence establishes Miller's misconduct beyond any doubt. It is immaterial whether he actually stated at the Hackensack Hospital that he was investigating the mugging. His conduct gave all the appearance of official involvement of the Sheriff's Office. Failing to promptly report a serious crime, a high misdemeanor such as an atrocious assault and battery, is a grave offense which may itself constitute an indictable crime. *N. J. S. A.* 2A:97-2.

Having regard for the high trust that must be placed in sheriff's officers, particularly jail guards, because of their sensitive involvement with prison inmates, we conclude that the penalty of removal from employment imposed by Miller's employing authority was well within that authority's discretion. *Cf. Moorestown Tp. v. Armstrong,* 89 *N. J. Super.* 560 (App. Div. 1965), certif. den. 47 *N. J.* 80 (1966). The Civil Service Commission erred in reducing the penalty to a six-month suspension and ordering mitigated back pay. *Cf. id.* Accordingly, the order of the Civil Service Commission is reversed and the employing authority's order of removal from employment is reinstated.